UNITED STATES DISTRICT COURT
For the Northern District of California

# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>OCEAN LABEL INC.,<br><br>        Defendant.<br>_____/ | No. C 14-01129 JSW (LB)<br><br>**REPORT AND RECOMMENDATION**<br><br>[Re: ECF No. 24] |

## INTRODUCTION

In this action, which arises under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 ("ERISA"), Plaintiff Pension Benefit Guaranty Corporation ("PBGC") has sued Defendant Ocean Label, Inc. ("Ocean Label") and seeks a default judgment (1) terminating the Dennis J. Brennan, Inc. Defined Benefit Pension Plan (the "Pension Plan"), (2) appointing PBGC as the Pension Plan's statutory trustee, (3) establishing August 30, 2014 as the Pension Plan's termination date; and (4) directing the transfer of any records, assets, or other property of the Pension Plan to PBGC. The district court referred PBGC's motion for default judgment to the undersigned for a report and recommendation. Upon consideration of PBGC's unopposed motion and the applicable law, the court **RECOMMENDS** that the district court grant PBGC's motion and enter the requested judgment against Ocean Label.

**STATEMENT**

**I. FACTUAL ALLEGATIONS**

The Pension Plan, which is a defined benefit pension plan covered by Title IV of ERISA, was established by Ocean Label on February 1, 1995, for the benefit of Ocean Label's employees. Complaint, ECF No. 1 ¶¶ 13-14[1]; *see* 29 U.S.C. §§ 1002(35), 1321(a). The Plan has a total of 13 participants. Complaint, ECF No. 1 ¶ 13.

No required employer contributions have been made to the Pension Plan since October 2002, and on December 15, 2009 the Pension Plan was closed to any additional benefit accruals by participants. *Id.* ¶¶ 15-16.

In September 2012, the United States Department of Labor ("DOL") informed the PBGC of reports it received from Pension Plan participants that participants were not being paid their pension benefits, and that Mr. Brennan was converting Pension Plan assets for his personal use. *Id.* ¶ 17. DOL further informed PBGC that Mr. Brennan appears to have made numerous withdrawals of money from the Pension Plan. *Id.* ¶ 18. This money was neither distributed to Pension Plan participants nor expended on permissible Pension Plan expenses. *Id.* In addition, basic administration of the Pension Plan has been lacking. *Id.* ¶ 19. Plan professionals have resigned because requests for payment for services rendered were ignored, and participant requests to be put into pay status under the Pension Plan have been ignored by the Pension Plan's Administrator. *Id.*

On August 20, 2013, PBGC issued its determination ("Determination") that the Pension Plan will be unable to pay benefits when due under 29 U.S.C. § 1342(a)(2) and that the Pension Plan must be terminated under 29 U.S.C. § 1342(c). *Id.* ¶ 20 & Ex. A. PBGC sent a copy of the Determination to Ocean Label via Federal Express on August 29, 2013, and offered to enter into an agreement consensually terminating the Pension Plan and naming PBGC statutory trustee thereof. *Id.* ¶ 21. As of March 11, 2014, PBGC received no response from Ocean Label. *Id.*

On August 30, 2013, PBGC published notice of its Determination in the Tri-Valley Times newspaper, which covers the area in which the Pension Plan was administered and benefits under

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the ECF-generated page numbers at the top of the document.

C 14-01129 JSW (LB)
REPORT AND RECOMMENDATION                    2

the Pension Plan were earned (Pleasanton, California). *Id.* ¶ 22. This notice informed participants that PBGC was proceeding to terminate the Pension Plan in accordance with ERISA. *Id.*

## II. PROCEDURAL HISTORY

PBGC filed its complaint on March 11, 2014. *See generally id.* It requested that the court: (1) terminate the Pension Plan, (2) appoint PBGC as the Pension Plan's statutory trustee, (3) establish August 30, 2013 as the Pension Plan's termination date; and (4) direct Ocean Label and all other persons or entities having possession, custody, or control of any records, assets, or other property of the Pension Plan, or any documents required to determine Pension Plan benefits, to transfer, convey, and deliver all such items to PBGC. *Id.* at 7-8. PBGC served the complaint on Ocean Label's registered agent on March 24, 2014. Executed Summons, ECF No. 13. The registered agent then wrote to PBGC confirming receipt of the complaint and advising it that Ocean Label's corporate status was "suspended," which meant, among other things, that Ocean Label could not appear as a defendant in this action. *See* Rayle Affidavit, Ex. A, ECF No. 14-2. To date, Ocean Label has not appeared in this action or otherwise communicated with PBGC. On PBGC's motion, the district court thereafter granted PBGC permission to make alternate service of the complaint on the California Secretary of State. 8/12/2014 Order, ECF No. 20. PBGC served the California Secretary of State with the complaint on August 14, 2014. Proof of Service, ECF No. 21. After Ocean Label failed to respond to the complaint, and upon PBGC's request, the Clerk of the Court entered Ocean Label's default. Entry of Default, ECF No. 23.

On October 7, 2014, PBGC filed the pending motion for default judgment. Motion, ECF No. 24. The next day, the district court referred it to the undersigned for a report and recommendation. Order of Referral, ECF No. 25. Ocean Label did not file an opposition to the motion, nor did it appear at the November 20, 2014 hearing. 11/20/2014 Minute Order, ECF No. 28.

## ANALYSIS

## I. THE COURT HAS JURISDICTION OVER THIS MATTER AND DEFENDANT

Before entering default judgment, a court must determine whether it has jurisdiction over Ocean Label. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### A. Subject-Matter Jurisdiction

District courts have original jurisdiction to hear civil cases arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In this action, PBGC seeks, under 29 U.S.C. §§ 1342 and 1370, to terminate the Pension Plan, have itself appointed as statutory trustee, establish a termination date for the Pension Plan, and require the transfer Pension Plan-related assets and documents to it. *See* Complaint, ECF No. 1 ¶ 2. Thus, the court has subject-matter jurisdiction over this action.

### B. Personal Jurisdiction

As the party seeking to invoke this court's jurisdiction, PBGC bears the burden of establishing that this court has personal jurisdiction over Ocean Label. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Here, the court may exercise personal jurisdiction over Ocean Label because the Pension Plan was administered, and benefits under the Pension Plan were earned, in this District. *See* Complaint, ECF No. 1 ¶ 22; *see* 29 U.S.C. § 1370(c).

## II. THE *EITEL* FACTORS AND ENTRY OF DEFAULT JUDGMENT

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for – and the court may grant – a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Default judgments are generally disfavored because "cases should be decided on the merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The court must consider the following factors when deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*. at 1471-72.

### A. Merits and Sufficiency (the Second and Third Factors of the *Eitel* Test)

After entry of default, well-pleaded allegations in the complaint regarding liability and entry of

default are taken as true, except as to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The court is not required to make detailed findings of fact. *Id*. Default judgment cannot exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

The Supreme Court has explained what PBGC is and what it may do:

> . . . PBGC is a wholly owned United States Government corporation, *see* 29 U.S.C. § 1302, modeled after the Federal Deposit Insurance Corporation. *See* 120 Cong. Rec. 29950 (1974) (statement of Sen. Bentsen). The Board of Directors of the PBGC consists of the Secretaries of the Treasury, Labor, and Commerce. 29 U.S.C. § 1302(d). The PBGC administers and enforces Title IV of ERISA. Title IV includes a mandatory Government insurance program that protects the pension benefits of over 30 million private-sector American workers who participate in plans covered by the Title. In enacting Title IV, Congress sought to ensure that employees and their beneficiaries would not be completely "deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S. Ct. 2709, 2713, 81 L. Ed. 2d 601 (1984). *See also Nachman Corp. v. Pension Benefit Guaranty Corporation*, 446 U.S. 359, 361-362, 374-375, 100 S. Ct. 1723, 1726, 1732-33, 64 L. Ed.2d 354 (1980).
>
> When a plan covered under Title IV terminates with insufficient assets to satisfy its pension obligations to the employees, the PBGC becomes trustee of the plan, taking over the plan's assets and liabilities. The PBGC then uses the plan's assets to cover what it can of the benefit obligations. *See* 29 U.S.C. § 1344 (1982 ed. and Supp. IV). The PBGC then must add its own funds to ensure payment of most of the remaining "nonforfeitable" benefits, i.e., those benefits to which participants have earned entitlement under the plan terms as of the date of termination. §§ 1301(a)(8), 1322(a) and (b). ERISA does place limits on the benefits PBGC may guarantee upon plan termination, however, even if an employee is entitled to greater benefits under the terms of the plan. *See* 29 CFR § 2621.3(a)(2) and App. A (1989); 29 U.S.C. § 1322(b)(3)(B). In addition, benefit increases resulting from plan amendments adopted within five years of the termination are not paid in full. Finally, active plan participants (current employees) cease to earn additional benefits under the plan upon its termination and lose entitlement to most benefits not yet fully earned as of the date of plan termination. 29 U.S.C. §§ 1322(a) and (b), 1301(a)(8); 29 CFR § 2613.6 (1989).
>
> The cost of the PBGC insurance is borne primarily by employers that maintain ongoing pension plans. Sections 4006 and 4007 of ERISA require these employers to pay annual premiums. *See* 29 U.S.C. §§ 1306 and 1307 (1982 ed. and Supp. IV). The insurance program is also financed by statutory liability imposed on employers who terminate under-funded pension plans. Upon termination, the employer becomes liable to the PBGC for the benefits that the PBGC will pay out. Because the PBGC historically has recovered only a small portion of that liability, Congress repeatedly has been forced to increase the annual premiums. Even with these increases, the PBGC in its most recent annual report noted liabilities of $4 billion and assets of only $2.4 billion, leaving a deficit of over $1.5 billion.
>
> As noted above, plan termination is the insurable event under Title IV. Plans may be terminated "voluntarily" by an employer or "involuntarily" by the PBGC. An employer may terminate a plan voluntarily in one of two ways. It may proceed with a "standard termination" only if it has sufficient assets to pay all benefit commitments. A standard termination thus does not implicate PBGC insurance responsibilities. If

an employer wishes to terminate a plan whose assets are insufficient to pay all benefits, the employer must demonstrate that it is in financial "distress" as defined in 29 U.S.C. § 1341(c) (1982 ed., Supp. IV). Neither a standard nor a distress termination by the employer, however, is permitted if termination would violate the terms of an existing collective-bargaining agreement. 29 U.S.C. § 1341(a)(3).

The PBGC, though, may terminate a plan "involuntarily," notwithstanding the existence of a collective-bargaining agreement. *Ibid.* Section 4042 of ERISA provides that the PBGC may terminate a plan whenever it determines that:

> "(1) the plan has not met the minimum funding standard required under section 412 of title 26, or has been notified by the Secretary of the Treasury that a notice of deficiency under section 6212 of title 26 has been mailed with respect to the tax imposed under section 4971(a) of title 26,
>
> "(2) the plan will be unable to pay benefits when due,
>
> "(3) the reportable event described in section 1343([c])(7) of this title has occurred, or
>
> "(4) the possible long-run loss of the [PBGC] with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated."

29 U.S.C. § 1342(a).

Termination can be undone by PBGC. Section 4047 of ERISA, 29 U.S.C. § 1347, provides:

> "In the case of a plan which has been terminated under section 1341 or 1342 of this title the [PBGC] is authorized in any such case in which [it] determines such action to be appropriate and consistent with its duties under this subchapter, to take such action as may be necessary to restore the plan to its pretermination status, including, but not limited to, the transfer to the employer or a plan administrator of control of part or all of the remaining assets and liabilities of the plan."

When a plan is restored, full benefits are reinstated, and the employer, rather than the PBGC, again is responsible for the plan's unfunded liabilities.

*Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 636-40 (1990) (footnotes omitted).

Here, PBGC issued its Determination that the Pension Plan will be unable to pay benefits when due and that the Pension Plan must be terminated. Complaint, ECF No. 1 ¶¶ 8, 20 & Ex. A. It thus seeks to involuntarily terminate the Pension Plan under 29 U.S.C. § 1342(a)(2) and (c). The court may establish a termination date of the Pension Plan under 29 U.S.C. § 1348(a)(4) because PBGC and the Pension Plan did not agree on one. PBGC also seeks to be appointed as statutory trustee of the Pension Plan, as it may do under 29 U.S.C. § 1342(b)(1). In light of PBGC's allegations and the

applicable law, the court finds that PBGC has sufficiently alleged its claims and that those claims have merit.

**B. The Remaining *Eitel* Factors**

The remaining *Eitel* factors weigh in favor of default judgment.

*1. The Possibility of Prejudice to PBGC*

If the motion is not granted, PBGC has no recourse. As explained above, under 29 U.S.C. § 1342(c), a pension plan can be terminated only by consent of the pension plan's administrator or by decree of a district court. In this case, Ocean Label's default makes it impossible to terminate the Pension Plan consensually, leaving a court order as the only option. And without terminating the Pension Plan, PBGC will be unable to pay Pension Plan benefits under the ERISA insurance program.

*2. The Possibility of a Dispute concerning a Material Fact*

As Ocean Label has not appeared and PBGC's factual allegations are taken as true, there are no disputed issues of material fact.

*3. Excusable Neglect*

Nothing in the record suggests excusable neglect. To the contrary, Ocean Label's registered agent confirming receipt of the complaint and acknowledged that it could not appear as a defendant in this action because it is a "suspended" corporation.

*4. The Sum of Money at Stake in the Action*

PBGC does not seek money damages in this action.

*5. The Strong Policy in the Federal Rules that Favors Decisions on the Merits*

When determining whether to grant a default judgment, the court must consider the strong policy of the federal courts in favoring decisions on the merits. This policy, however, is not dispositive; rather, the court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see Bd. of Trs. v. RBS Washington Blvd. LLC*, No. C 09-06660 WHA, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010).

That is what has occurred here.

## III. THE RELIEF SOUGHT

PBGC seeks a default judgment (1) terminating the Pension Plan, (2) appointing PBGC as the Pension Plan's statutory trustee, (3) establishing August 30, 2013 as the Pension Plan's termination date; and (4) directing all persons having possession, custody, or control of any records, assets, or other property of the Pension Plan to transfer such items to PBGC. Proposed Order, ECF No. 24-3.

As explained above, PBGC has sufficiently alleged that it may seek to have the Pension Plan terminated under 29 U.S.C. § 1342(a)(2) and (c). It also may seek to have itself appointed as statutory trustee under 29 U.S.C. § 1342(b)(1).

As for the termination date, because PBGC and the Pension Plan did not agree on one, the court may establish it under 29 U.S.C. § 1348(a)(4). PBGC asserts that August 30, 2013 is an appropriate date because its August 20, 2013 Determination told Ocean Label that it would seek to have the Pension Plan terminated as of that date. It also published notice of its Determination in the Tri-Valley Times newspaper on August 30, 2013. The court agrees with PBGC and finds August 30, 2013 an appropriate date for these reasons.

As for the transfer of all Pension Plan-related information and documents, 29 U.S.C. § 1342(d)(1)(A)(ii) provides that a statutory trustee has the power "to require the transfer of all (or any part) of the assets and records of the plan to himself as trustee." Thus, the court finds that PBGC's request for a judgment to direct all persons having possession, custody, or control of any records, assets, or other property of the Pension Plan to transfer such items to PBGC, is appropriate. *See Pension Benefits Guar. Corp. v. Natasi White, Inc.*, 476 F. Supp. 2d 228, 230 (E.D.N.Y. 2007) (approving such relief); *Pension Benefit Guar. Corp. v. Allen Tool Corp.*, No. 99-CV-2050, 2000 WL 687898, at *1 (N.D.N.Y. 2000).

## CONCLUSION

Based on the foregoing, the court **RECOMMENDS** that the district court grant PBGC's motion and enter a default judgment against Ocean Label that (1) terminates the Pension Plan, (2) appoints PBGC as the Pension Plan's statutory trustee, (3) establishes August 30, 2014 as the Pension Plan's termination date; and (4) directing the transfer of any records, assets, or other property of the

Pension Plan to PBGC.

The court **DIRECTS** PBGC to serve a copy of this Report and Recommendation on Ocean Label's registered agent and on the California Secretary of State.

Any party may file objections to this Report and Recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review the issue in the district court.

**IT IS SO ORDERED.**

Dated: November 20, 2014

_____
LAUREL BEELER
United States Magistrate Judge